UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FISCHLER, Individually and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NVA RE, LLC, D/B/A TRIBECA SOHO ANIMAL HOSPITAL<br><br>        Defendant. | ECF CASE<br><br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.    Plaintiff Brian Fischler, who is legally blind, brings this civil rights action against Defendant NVA RE, LLC d/b/a Tribeca Soho Animal Hospital ("Defendant") for its failure to design, construct, maintain, and operate its website, https://www.tribecavets.com/ (the "Website"), to be fully accessible to and independently usable by Plaintiff Fischler and other blind or visually-impaired people. Defendant denies full and equal access to its Website.

2.    Plaintiff Fischler, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), and New York State Human Rights Law ("NYSHRL"), against Defendant.

3.    Plaintiff Fischler seeks a permanent injunction to cause Defendant to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

## THE PARTIES

4.      Plaintiff Fischler is, at all relevant times, a resident of Astoria, New York, Queens County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL

5.      Upon information and belief, Defendant is at all relevant times a limited liability company that is organized under Illinois law and is authorized to do business in the State of New York.  Defendant does business in the State of New York, by offering its services to customers located within the State.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Fischler's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Fischler's NYSHRL, N.Y. Exec. Law Article 15 *et seq.*, claims.

8.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(c)(2) because jurisdiction exists over it: it has a continuous and systematic course of doing business in this District, as it operates multiple locations in this District, rents property in this District, employs individuals in this District, is registered to do business here, pays taxes in this District; and it is purposely and intentionally availing itself of the privileges of conducting business in this District.

9.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>NATURE OF ACTION</u>

10.     The COVID-19 pandemic has shifted the world into an almost entirely online model.  Restaurants need a website for customers to place pick-up and delivery orders.  Entertainment venues are delivering performances to audiences via their Websites or other online streaming services.  Our educational institutions, including private schools and Universities have shifted to a virtual classroom with distance-learning being the new normal.  Furthermore, with store closures or capacity limitations, stores are relying on their Websites to serve as the fundamental point of contact between their business and consumers.  In order for blind and visually impaired consumers to access these Websites, they must use screen reading software.

11.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer. Apple has its own proprietary software called VoiceOver that comes with all Apple devices.

12.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

13.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 Levels A and AA of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

14.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

        a.      Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

        b.      Videos have audio description.

        c.      Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

        d.      Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

e.      Equivalent text is provided when using scripts.

f.      Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

g.      Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.      Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it causes problems in screen readers which use IDs for labeling controls and table headings.

i.      Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.      The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

p.      Where receiving and then removing pointer hover or keyboard focus triggers additional content to become visible and hidden, a mechanism is available to dismiss the additional content without moving the pointer hover or keyboard focus, the pointer can be moved over the additional content without the additional content disappearing, and the additional content remains visible until the hover or focus trigger is removed, the user dismisses it or the information is no longer valid.

## STATEMENT OF FACTS

<u>Defendant, Its Website And Its Website's Barriers</u>

15.      Defendant is a veterinary medical hospital, which operates four locations throughout New York.  Its services include on-site veterinary care, diagnostic, training, and special health services, general wellness, end of life care, and more.  Through the Website, customers can also order food and medicine from Defendant's West Village location at 75 8th Avenue, New York, New York.

16.      Defendant's Website is heavily integrated with its hospitals, serving as a gateway to them.   Customers can book in-person appointments for Defendant's veterinary services at its four Manhattan locations and purchase food and medicine from Defendant's West Village location.  Through the Website, customers can learn about Defendant's veterinary services and its other specialties, get information about Defendant's medical team and its four New York hospitals, get access to useful documents and forms, get contact information and pricing estimates, and read customer reviews.  It is also where potential customers can learn about Defendant's West Village pharmacy, its privacy policy, and get answers to frequently asked questions.

17.      It is, upon information and belief, Defendant's policy and practice to deny Plaintiff Fischler and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its hospitals. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Fischler and visually-impaired persons have been and are still being denied equal access to Defendant's hospitals and the numerous facilities, goods, services, and benefits offered to the public through its Website.

18.    Plaintiff Fischler cannot use a computer without the assistance of screen-reading software. He is, however, a proficient VoiceOver user and uses it to access the Internet. He has visited the Website on separate occasions using screen-reading software.

19.    During his visits to the Website, the last occurring on or about October 6, 2021, Plaintiff Fischler encountered multiple access barriers that denied him the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Defendant's hospitals. Because of these barriers he was unable to, substantially equal to sighted individuals:

a.    Know what is on the Website. This is due to the fact that some images are poorly labeled with no alternative text.  For example, on the Services home page, some of the images depicting the different services offered by Defendant are not detected by the screen reader.  Additionally, the form fields in the Contact-Us home page are not properly labeled and therefore Plaintiff Fischler was unable to get in contact with Defendant.  On the Contact-Us home page, sighted users are asked to enter their name, phone number, email, and an optional personal message.  However, when navigating the Contact-Us home page, these options are completely inaccessible to Plaintiff Fischler. Plaintiff Fischler kept getting the message "this field is required," without knowing what information he is required to enter.  He needed sighted assistance to learn what information each form field required.

b.    Navigate the Website. Plaintiff Fischler had difficulty navigating this Website.  On the "Useful Documents and Forms" home page, the forms were completely inaccessible to Plaintiff Fischler.  Sighted users get to download several forms to fill out, including the New Client Form, Patient Drop Off, Client Estimate of

Costs, and more. When Plaintiff Fischler clicked on the New Client Form, the screen reader only detected half of the form, and the questions after "Patient Information" were inaccessible to Plaintiff Fischler. Additionally, he did not know that the PDF was fillable and needed sighted assistance to learn that he can download and electronically fill out the New Client form. When accessing the Book an Appointment home page, Plaintiff Fischler encountered problems with screen reader focus. As he navigated the Website, the screen reader focus was automatically thrown to the bottom of the page. Sighted users are asked to choose their appointment type and their pet's species. However, these edit fields are not detected by the screen reader and therefore Plaintiff Fischler does not have access to these options. Even with sighted assistance, Plaintiff Fischler was unable to locate these options and enter his information. Because there is no way for Plaintiff Fischler to book an appointment at Defendant's New York locations, he ultimately abandoned the process and was unable to book an appointment for Defendant's services.

20. Plaintiff Fischler was denied full and equal access to the facilities and services Defendant offers to the public on its Website because he encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant websites:

a. Images are not properly labeled.

b. Elements are not properly labeled.

c. Document titles are blank.

d. Headings are not nested correctly

e. Headings are empty.

f.     Links use general text without no surrounding text explaining the links' purpose.

g.     Several links on a page share the same link text but go to different destinations.

h.     Webpages have markup errors.

i.     Webpages have duplicate IDs which cause problems in screen readers.

j.     Webpage has links to a PDF file, but does not provide a link to download Acrobat Reader.

<u>Defendant Must Remove Barriers to Its Website</u>

21.     Due to the Website's inaccessibility, blind and visually-impaired individuals such as Plaintiff Fischler, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its Website. The Website's access barriers that Plaintiff Fischler encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Defendant's hospitals and enjoying them equal to sighted individuals.

22.     If the Website was equally accessible to all, Plaintiff Fischler could independently navigate it, view goods and service items, learn about Defendant's hospitals and book an appointment, as sighted individuals do.

23.     Through his attempts to use the Website, Plaintiff Fischler has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

24. Because simple compliance with the WCAG 2.1 AA Guidelines would provide Plaintiff Fischler and other visually-impaired consumers with equal access to the Website, Plaintiff Fischler alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a. Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Fischler;

b. Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Fischler; and,

c. Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Fischler, as a member of a protected class.

25. Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

26. Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Fischler seeks under 42 U.S.C. § 12188(a)(2).

27. Because its Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Fischler seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendant to retain a qualified consultant acceptable to Plaintiff Fischler to assist Defendant to comply with WCAG 2.1 AA guidelines for its Website:

a. Remediating the Website to be WCAG 2.1 AA compliant;

b. Training Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 AA guidelines;

c. Regularly checking the accessibility of the Website under the WCAG 2.1 AA guidelines;

d. Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 AA guidelines; and,

e. Developing an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

28. Although Defendant may currently have centralized policies on maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

29. Without injunctive relief, Plaintiff Fischler and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

30. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue directly from the Website and indirectly by encouraging customers to visit the hospitals. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

31.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

CLASS ACTION ALLEGATIONS

32.     Plaintiff Fischler seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered in the hospitals , during the relevant statutory period ("Class Members").

33.     Plaintiff Fischler seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's hospitals during the relevant statutory period ("New York Subclass Members").

34.     Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

    a.     Whether Defendant's hospitals are "public accommodations";

    b.     Whether Defendant's Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

    c.     Whether Defendant's Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

d. Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

e. Whether Defendant's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

35. Plaintiff Fischler's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendant has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

36. Plaintiff Fischler will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

37. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

38. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

39. Plaintiff Fischler, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

40. Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41. Defendant's hospitals are public accommodations under Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Defendant's hospitals. The Website is a service that is integrated with Defendant's hospitals .

42. Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

43. Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

44. Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

45. These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Fischler, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

46. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Fischler requests the relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

47. Plaintiff Fischler, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

48. Defendant's hospitals constitute sales establishments and public accommodations under N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant's hospitals. Defendant's Website is a service that is by and integrated with its hospitals.

49. Defendant is subject to NYSHRL because it owns and operates its hospitals and the Website. Defendant is a "person" under N.Y. Exec. Law § 292(1).

50. Defendant is violating the NYSHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its hospitals to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public. N.Y. Exec. Law §§ 296(2)(a), 296(2)(c)(i), 296(2)(c)(ii).

51. Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

52.     Defendant's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendant has:

a.      Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

53.     Defendant discriminates, and will continue in the future to discriminate against Plaintiff Fischler and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website and its hospitals under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

54.     As Defendant's actions violate the NYSHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination.

55.     Plaintiff Fischler is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq*. for every offense.

56.     Plaintiff Fischler is also entitled to reasonable attorneys' fees and costs.

57.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL

58.     Plaintiff Fischler, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59.     Defendant's hospitals are sales establishments and public accommodations under NYCHRL, N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its establishments.

60.     Defendant is subject to NYCHRL because it owns and operates its hospitals in the City of New York, and its Website, making it a person under N.Y.C. Admin. Code § 8-102(1).

61.     Defendant is violating the NYCHRL in refusing to update or remove access barriers to Website, causing its Website and the services integrated with its hospitals to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that the Defendant makes available to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(15)(a).

62.     Defendant's actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

        a.      Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

        b.      Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

63. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff Fischler and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

64. As Defendant's actions violate the NYCHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination.

65. Plaintiff Fischler is also entitled to compensatory damages, as well as civil penalties and fines for each offense. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

66. Plaintiff Fischler is also entitled to reasonable attorneys' fees and costs.

67. Under N.Y.C. Admin. Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>FOURTH CAUSE OF ACTION</u>
DECLARATORY RELIEF

68. Plaintiff Fischler, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69. An actual controversy has arisen and now exists between the parties in that Plaintiff Fischler contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the

goods, services and facilities of its Website and by extension its hospitals, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y. Exec. Law § 296, *et seq.* prohibiting discrimination against the blind.

70.     A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Fischler respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.* and N.Y. Exec. Law § 296, *et seq*., and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to bring its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., and the laws of New York

d.     An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e.	Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f.	Pre- and post-judgment interest;

g.	An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.	Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Fischler demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
	November 8, 2021

LIPSKY LOWE LLP


<u>s/ Christopher H. Lowe</u>
Christopher H. Lowe
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
212.392.4772
chris@lipskylowe.com